# Carl Zinkl, Appellee, v. Aluminum Company of America, Appellant.

1. VARIANCE—*when question not considered.* If the rules of the court are ignored and the declaration filed not abstracted a question of variance will not be considered.

2. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

3. MASTER AND SERVANT—*what essential to application of doctrine of assumed risk.* In order that a servant shall be held to have assumed the risk of injury it must appear not only that he had knowledge of the defect which resulted in his injury but also that he appreciated the danger likely to result therefrom.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair county; the HON. ROBERT T. COOK, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 21, 1912. *Certiorari* denied by Supreme Court (making opinion final).

KRAEMER, KRAEMER & CAMPBELL, and C. H. G. HEINFELDEN, for appellant.

KOERNER & KOERNER and ALBERT E. HAUSMAN, for appellee.

MR. JUSTICE McBRIDE delivered the opinion of the court.

At the January term, 1911, of the Circuit Court of St. Clair county, appellee recovered judgment against appellant for the amount of $1250, to reverse which judgment this appeal is prosecuted.

The stipulation of the parties with reference to the condition of the machinery was:

"The machinery in question in this case was in a house known as the Lime Grinding House of the Aluminum Company. of America; the same is about one hundred feet long. This house contained six lime grinding mills which are run by electric power transmitted to the mills from a transmission shaft which is also contained in the house. This transmission shaft is about seventy-five feet long and runs horizontally about four feet from the ground through the lime grinding house, and through the wall of the same to where it is connected with an electric motor just outside the door of the lime grinding house, in another room but in the same building. On this transmission shaft are a number of pulleys over which runs leather belting which connects with the lime grinding machines or mills. There are also collars fixed to the transmission shaft at various places. These pulleys are eleven or twelve inches in diameter and about eight and a half inches in width, and the belts which run over these pulleys were about eight and one-half inches wide and one-half inch thick and about thirty-five or thirty-six feet long. At the point between the pulleys which operated machines two and three was affixed a collar or coupling which was about eleven or twelve inches in diameter and was secured on said transmission shaft about eight and one half inches from the nearest pulley. The transmission shaft revolved at the rate of about three hundred and fifty revolutions per minute. There were some concrete pillar blocks there and after the belt had been removed from the pulley over which it ran it was supposed to be placed on these pillar blocks."

It further appears from the evidence that on the 13th day of June, 1909, appellee was working in appellant's

factory at East St. Louis; that he was 36 years old and had lived in America for four years; that he had been at work in the lime house about two months before he was injured; at first he began sweeping and later on helping do whatever was necessary to be done, and eventually became the head workman in the mill. He had worked around machinery of this character for about three years. On the morning in question Ezra Talbot, who was night foreman and had charge of the machines at the time appellee was hurt, directed the appellee, as he claims, to stop numbers one and two mills and let number three run. Appellee took an iron rod or bar and pried the belts off of numbers one and two mills while the machinery was in operation. The belt from pulley No. 2 fell between the coupling and the pulley and being about the same width, in some manner, became fastened to the pulley and owing to the rapid revolution of the pulley the belt was being gathered up with great force and struck the foot of appellee and caused the injury complained of.

The first error complained of by the appellant is the refusal of the court at the close of the testimony of appellee to strike out all evidence given by the said appellee with reference to the order given him by Talbot, for the reason there was a variance between the declaration and the testimony. To determine this question it was absolutely necessary that the declaration filed herein should have been abstracted so that the court could have determined as to whether or not there was a variance between the allegations of the declaration and the evidence. Rule 23 of this court requires the party bringing a cause into this court to furnish a complete abstract, or abridgment of the record therein, and unless this rule is complied with the question cannot be considered. It is not sufficient to say that it may have been determined from the record. It will not do to ignore the rules of this and of the supreme

court, especially when the question sought to be determined is one of variance. In Staude et al. v. Schumacher, 187 Ill. 187, our Supreme Court said: "The party bringing a case to the Supreme Court for review must furnish a complete abstract of the record, properly indexed, such as will fully present the errors relied upon and be sufficient for the examination and determination of the questions involved without resort to the written record." And Judge Creighton of the Appellate Court of the Fourth District in the case of Johnson v. Hartman, 119 Ill. App. 206, said: "The pretended abstract does not contain a complete abridgment of the record. Neither the affidavit, the writ, the return, the Justice's transcript, the instructions to the jury or any of them, the verdict of the jury, the motion for a new trial, the judgment appealed from, nor the substance of them or any of them are set out. And there is no pretense of an index to it."

In St. L. A. & T. H. R. R. Co. v. Will, 53 Ill. App. 649, this court said: "It is not the privilege of counsel to ignore the rules of this court, when such rules in their judgment are unnecessary." Mr. Justice Shepard of the First District, writing for that court in Douglass v. Miller, 102 Ill. App. 345, said: "We find, upon an examination of the abstract which appellant has filed, that it is defective in almost every particular which appellee has specifically pointed out. We are not at liberty, even were we so disposed, to overlook the defects, and we ought to affirm on that ground alone."

When counsel desires this court to consider a question they must abstract such portions of the record as are necessary to present the question, otherwise it cannot be considered, and as the abstract in this case fails to disclose such parts of the record as will enable the court to consider the error relied upon, we must decline to consider it.

The next error complained of is, that the trial court erred in not directing a verdict at the close of the evidence, because the appellee was not in the exercise of ordinary care for his own safety immediately before and at the time of his injury. In support of this contention appellant insists that as appellee was 36 years old, had worked with machinery of this kind for some time, was familiar with it and had often shut it down to take off belts, knew the condition of the machinery and had prior to this time called upon Mr. Wilfley for the assistance of men to turn the wheel and had often thrown the belts off after the motors had stopped, and had been told by Mr. Wilfley not to throw the belts when the machinery was in operation, that he was not exercising due care for his own safety.

If this were all of the testimony we would be inclined to agree with counsel for appellant but the record further discloses that shortly after the appellee began work for appellant that he had been instructed by appellant's foreman, Mr. Eddy, that when he desired to stop one of the mills to take the iron bar and pry the belt off while the machinery was in operation, and that other employes had pursued the same course in the work, and that he had repeated this same operation daily from fourteen to twenty-one days, and that he did not know of the dangers incurred by throwing off the belts while the shaft was in motion and did not know that the belt was liable to catch between the collar and the pulley, and that he had never stopped the motor to throw off the belts but had stopped the motor only when all the mills were to be stopped at once. We cannot say as a matter of law that the appellee was guilty of contributory negligence but these were questions of fact to be determined by the jury.

In the case of Pioneer Construction Co. v. Howell, 189 Ill. 123, the court says: "Whether the plaintiff had such knowledge or had knowledge of facts from

which it may be inferred he knew of the danger, is a question of fact to be passed upon by the jury.''

It is contended by counsel for appellant that as there were two methods by which these belts may have been removed, one of which was a safe method and the other a dangerous one, and that in as much as appellee chose the dangerous one that he was then estopped from recovery for damages resulting therefrom. The legal doctrine here announced is undoubtedly true but in the application of the doctrine to this case we are confronted with the statement of appellee that he did not know of the dangers incurred by throwing off the belts while the shaft was in motion; that he had been instructed by one of the foremen to throw the belts off in the manner he did throw them and that he had frequently done so, and that he had never stopped the motor to throw off the belts unless he desired to stop all the mills, makes it as we think, a question of fact as to whether he really knew and appreciated the danger that might arise from throwing off the belts in the manner in which he did. Before appellee will be estopped from recovering it must appear that he knew and appreciated the danger likely to result therefrom. A servant's mere knowledge of a defect without knowing it is dangerous does not amount to an assumption of a risk thereby occasioned. Union Show Case Co. v. Blindauer, 175 Ill. 325; Illinois Steel Co. v. Schymanowski, 162 Ill. 447.

While there is testimony in this case that tends to show appellee knew or might have known of the dangers resulting from throwing the belts off in the manner in which he did, there is also evidence tending to show that his knowledge of the machinery was gained as a helper, and that his knowledge was not as extensive with reference to the operation of this machinery as it might have been and that he did not understand and appreciate the dangers of performing the work in

the manner in which he did; and having been directed to do the work and having done it as he says, in the way in which he usually proceeded and had been instructed by some of the foremen to perform the work, we cannot say that the verdict of the jury is manifestly against the weight of the evidence, and unless we can so say it is our duty to affirm the judgment, and the judgment will be affirmed.

*Judgment affirmed.*