## ALICE L. IRWIN AND WILLIAM A. PAULSEN
### v.
## FLORA A. BROWN.

*Mortgages—Foreclosure.*

Upon a bill filed to foreclose a mortgage upon an undivided one-third of certain real estate, the same being given under a contract of settlement between complainant and one of the defendants, this court holds that the evidence fails to show that there was being pledged only the incumbered interest which said defendant had at one time conveyed to a person named; that no valid consideration appears for the alleged agreement to release the mortgage in question and to deliver up the note secured thereby; that it was not error for the trial court to fail in its decree to give any reason for the dismissal of the cross-bill filed by said defendant, other than that it was for want of equity, and declines to interfere with the decree for the complainant.

[Opinion filed May 26, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

November 17, 1889, Flora A. Brown, the appellee, filed her bill to foreclose a mortgage on an undivided one-third of certain property on Wells street, in Chicago.

The mortgage was given to secure the notes of William A. Paulsen, dated June 25, 1886, amounting to $13,500, and the mortgage sought to be foreclosed was executed in August, 1886, by Alice L. Irwin and husband, Mrs. Irwin being a sister of Paulsen and a niece of the appellee.

The mortgage was given under a contract of settlement between Flora A. Brown and Mr. Paulsen, made on the 25th day of June, 1886, and purporting to be in settlement of all dispute between them.

The bill, as well as the proof, shows that when Augusta Paulsen, mother of the appellants in this case, died, in 1882, she left, with other property, the property in question to her

three children, Mrs. Irwin, William A. Paulsen and Julius V. Paulsen; that in April, 1886, Mr. Paulsen made a deed of his undivided one-third to Mrs. Irwin; that on the same day that the deed was delivered to her, which was four days after it bore date, Mrs. Irwin and husband reconveyed to him by warranty deed. The deed to Mrs. Irwin was placed immediately of record, while the deed back was not recorded until February 4, 1887, a date later than the contract of settlement, and also later than the execution of the mortgage.

The contract of settlement contained, among others, the following provisions:

"Flora A. Brown is to execute a deed to said Paulsen, or such person as he may designate, of the five houses on the corner of Stone and Astor streets, Chicago, conveying the same subject to the mortgage for $22,000, and to all claims of contractors and others for debts incurred in the construction of said houses, to be assumed by the grantee."

"Said Paulsen to execute to said Flora A. Brown one note for $1,000 due on or before three years, and one note for $12,500 due on or before ten years, each to bear interest at five per cent, payable half yearly, said notes to be secured by a mortgage to be executed by Alice L. Irwin and husband, conveying the undivided one-third of all those parts of lot eleven in North addition to Chicago, and the land lying between said lot eleven and North Clark street, which was owned by Augusta Paulsen at the time of her death, said mortgage to be a valid and first lien save as to the mortgage on said property made by said Augusta Paulsen."

"Said Flora A. Brown to advance to said Paulsen the sum of $1,000 in cash, to be applied to the payment of interest due on the aforesaid mortgage of $22,000 and the taxes due on said property. Said advance of $1,000 to be repaid by the aforesaid note of that amount due in three years. A note of said Paulsen of $500 held by Flora A. Brown, to be surrendered to him. Said notes shall be marked 'non-negotiable.'"

The appellee claims in this case, that she relied solely upon

the records in taking the security for Paulsen's debt; Mrs. Brown also claims that at the time of the examination of the record there were shown to be defects in the title to the one-third conveyed to Mrs. Irwin by Mr. Paulsen, in this : first, Mr. Paulsen's wife had not joined in the deed to Mrs. Irwin and so had an inchoate right of dower therein, and second, a creditor's bill had been filed by one Wiemers, seeking to set aside the deed to Mrs. Irwin, and to declare a judgment against Paulsen, mentioned in the bill, a lien upon Paulsen's third.

Mrs. Irwin claims by way of defense that it was distinctly understood and agreed between all the parties, that the only reason that she executed the mortgage was that the title to Mr. Paulsen's one-third appeared of record to be in her, and that all parties to the contract intended and understood that the mortgage, when executed, should convey Mr. Paulsen's one-third and no other; that she received no consideration for the execution of the mortgage; that it was done solely for Mr. Paulsen's accommodation; that Mrs. Brown knew that, and accepted the mortgage upon Paulsen's one-third.

Mr. Paulsen's defense is upon the ground that the contract of June 25, 1888, did not embody the full terms of the settlement.

That at the time of making this last named contract, and for the purpose of inducing him to make it, Mrs. Brown had a verbal agreement with him; stated that the amount of the notes should not make any difference with him, as he would never be called upon or expected to pay them, and that just as soon as she was satisfied that he should get the benefit of it she should let him have them and that in case of her death she would provide in her will for their surrender and cancellation, and that the notes should be made " not negotiable." He says that these verbal agreements were afterward reduced to writing and signed by her, reciting them and making some further agreements. This last writing bears date November 11, 1886.

These matters are set up by Mr. Paulsen, not only in his

answer, but also in a cross-bill; in her answer to the cross-bill Mrs. Brown affirms the validity of the debt to her, denies she ever made any such writing as that of November 11, 1886, avers that if any such writing is in existence, purporting to be signed by her, that the signature is a forgery, and further, that even if she did sign such a writing, or make such an agreement, it was without consideration and void.

The Superior Court found and entered a decree in accordance with the prayer of the bill, declaring the mortgage to be a lien upon the undivided one-third of the Wells street property inherited by Mrs. Irwin from her mother; and the Superior Court also dismissed for want of equity the cross-bill filed by Paulsen to enforce the alleged agreement of release, made, he says, November 11, 1886.

Messrs. Black & Fitzgerald, Eugene Clifford and M. Blanchard, for appellants.

Mr. Frank J. Crawford, for appellee.

Waterman, P. J.    It is distinctly stated in the contract of settlement made between Paulsen and Mrs. Brown, in pursuance of which the mortgage in question was executed, that she is to receive a mortgage which is to be a valid and first lien, save as to the mortgage made by Augusta Paulsen.

A mortgage executed by Mrs. Irwin, upon the interest of Paulsen only, would have been of doubtful validity, and if valid, would not have been a first lien.    It would have been of doubtful validity, because the title to Paulsen's interest was, by virtue of the conveyance theretofore made by Mrs. Irwin, in him, Paulsen, and only by way of estoppel could the mortgage have been of any effect; if the mortgage had, by way of estoppel, operated as a conveyance of Paulsen's interest, it would have been postponed to the lien acquired by Wiemers under his judgment and creditor's bill against Paulsen, and would also have been subject to the dower

interest of Mrs. Paulsen, who had not joined in the conveyance by him made to Mrs. Irwin.

That Mrs. Brown should have been willing to accept so doubtful a security, in place of the valid and first lien to which she was entitled, is improbable, and that Mr. Babbage, an experienced solicitor, who was acting for her, should have consented to receive so imperfect a lien is incredible.

All previous negotiations are presumed to have been merged in the agreement of June 25th; the mortgage thereunder given is consistent with the agreement, and whatever may have been the understanding of Mrs. Irwin as to what she was doing when she executed that instrument, unless Mrs. Brown had the same understanding, the instrument must be held in accordance with its terms to convey the undivided one-third of the property therein described; the only undivided third of that property which Mrs. Irwin then had, was that which she inherited from her mother; the third which her brother had once conveyed to her, she had reconveyed to him long before she executed this mortgage. We think that the evidence fails to show that either Mrs. Brown or Mr. Babbage had any understanding that there was only being pledged the incumbered interest which Mr. Paulsen had once conveyed to Mrs. Irwin.

The alleged agreement for a release, dated Nov. 11, 1886, Mrs. Brown denies that she ever executed. If she made such an instrument, entirely for the benefit of her nephew, by which she promised, for no valuable consideration, to give him his note for $12,500 and to release at his request the mortgage securing the same, why did he not retain the instrument, or at least a duplicate original thereof? The burden of proving the execution of this document was upon him; his oath is opposed by that of the complainant. The testimony of Mr. Judd, and that as to the acknowledgment by Mr. Hawkinson, we do not regard as being more than to the effect that they saw Mrs. Brown and Mr. Paulsen sign some instrument.

It is not so difficult to rub out and reprint the words of a typewritten instrument, such as this was, as that the mere

fact of one's name being found appended thereto ought to outweigh all the evidence existing in this case that Mrs. Brown did not sign this agreement to surrender and release.

The alleged agreement to release is, moreover, not such a one as we think a court of equity would enforce. There is no valid consideration for the agreement Mrs. Brown is said to have made. Neither her desire to protect *his* interests, or his promise to pay his note to her, or her fear that if she bequeathed to him his note her " will might not hold good," or any previous *nudum pactum* to "hold his note until maturity and then give it gratis to him," would constitute a valid consideration for a promise by *her* to *him*. Gardner v. Watson, 13 Ill. 347–352; Waters v. Simpson, 2 Gilm. 570–576; Constantine v. Wells, 83 Ill. 192; Anson on Contracts, 71; Eastwood v. Kenyon, 11 A. & E. 438; Wennall v. Adney, 3 B. & P. 249.

The evidence offered by appellant upon this matter, which the court refused to receive, was merely to the effect that there were considerations for the agreement, in pursuance of which the mortgage was made, not set forth in the agreement, and that because of these she executed the alleged agreement to release.

Mrs. Brown has fully performed her part of the agreement for the mortgage, and if there were moral considerations which might have induced her to make the alleged agreement for a release, such fact would not, with all else herein shown, constitute sufficient evidence of execution in the face of her positive denial that she did execute such agreement to release.

Counsel for appellants urge the impropriety of selling Mrs. Irwin's property to pay Mr. Paulsen's debt, when, as they say, Mrs. Irwin only intended to mortgage Mr. Paulsen's interest; but they fail to explain why, if Mr. Paulsen's interest is available and ample as a security for his indebtedness, he did not so set forth and offer to turn it out in the cross-bill by him filed, or why Mrs. Irwin did not by cross-bill insist upon having the interest of Paulsen first sold for the satisfaction of this indebtedness.

It may be unsatisfactory to appellants, but it was not error for the court to fail in its decree to give any reason for the dismissal of the cross-bill filed by Paulsen, other than that it was for want of equity.

We find in this record no error requiring a reversal of the decree of the Superior Court, and it will be affirmed.

*Decree affirmed.*